UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

BRADLEY DWAYNE QUEEN,                    )   Civil No. 09cv1804 IEG (RBB)
                                         )
                  Petitioner,            )   **REPORT AND RECOMMENDATION**
                                         )   **DENYING PETITION FOR WRIT OF**
v.                                       )   **HABEAS CORPUS [DOC. NO. 4] AND**
                                         )   **ORDER DENYING EVIDENTIARY**
MATTHEW CATE, Secretary of the           )   **HEARING [DOC. NO. 28]**
California Department of                  )
Corrections and Rehabilitation,          )
                                         )
                  Respondent.            )
_____)

Petitioner Bradley Dwayne Queen, a state prisoner represented by counsel, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 [doc. nos. 1, 4].[1] On October 30, 2009, Respondent filed a Motion for Enlargement of Time to File Answer [doc. no. 5]. This Court granted the request, but before the Answer was due, Queen filed a Motion to Stay Proceedings Pending State Court Exhaustion [doc. nos. 6, 7]. Respondent filed a second Motion for Enlargement of Time to File

---

[1] Queen first filed his Petition on August 19, 2009; then he filed an Amended Petition on August 31, 2009, which differed from the original because it contained the Petitioner's signed verification. (Pet. 14; Am. Pet. 14.)

09cv1804 IEG (RBB)

1  Answer which was granted, and the Court also issued an Order

2  Setting Briefing Schedule on Petitioner's Application to Stay

3  Proceedings [doc. nos. 8-10].  This Court issued a Report and

4  Recommendation Denying Petitioner's Application to Stay

5  Proceeding Pending Exhaustion of State Court Remedies on March 4,

6  2010 [doc. no. 18].  On May 13, 2010, United States District

7  Judge Irma E. Gonzalez issued an Order Denying Motion for Stay

8  and Abeyance [doc. no. 22].  The district court dismissed grounds

9  two and three of the Petition, the unexhausted claims, and set a

10 new briefing schedule.  (Order Den. Stay Abeyance 8.)  Respondent

11 filed an Answer on May 28, 2010 [doc. no. 23].  Queen requested

12 additional time to file a Traverse, which was granted [doc. nos.

13 26-27].  On July 28, 2010, Queen filed a Traverse [doc. no. 28].

14 **I.  FACTUAL BACKGROUND**

15 On December 6, 2005, Jason Olea met a friend for food and

16 drinks in Pacific Beach.  (Lodgment No. 2, Rep.'s Appeal Tr. vol.

17 2, 83-85, Oct. 6, 2006.)  After eating, Olea returned to his car.

18 (Id. at 87.)  As he was getting into his truck, Queen approached

19 him and asked for the time.  (Id. at 88.)  Olea responded; then

20 Queen pulled open the door to the car.  (Id.)  He pointed a gun

21 at Olea and demanded his money and wallet.  (Id. at 88-89.)  Olea

22 surrendered the items and Queen ran away on foot.  (Id. at 89.)

23 Next, Olea got out of his car and followed Queen, staying some

24 distance behind him.  (Id. at 90.)  Queen crossed a street and

25 stopped running.  (Id. at 91.)  He turned around and fired a shot

26 at Olea.  (Id. at 90-91.)  Olea dropped to the ground and called

27 911.  (Id. at 91-92.)  He was not hit by the bullet.  (Id. at

28 92.)

1   The next day, December 7, 2005, a San Diego Police Officer
2   stopped Queen for a routine traffic violation.  (Lodgment No. 2,
3   Rep.'s Appeal Tr. vol. 1, 63, Oct. 4, 2006.)  During a search of
4   Queen's car, the officer discovered a wallet and ran a check on
5   the identification cards found inside.  (Id.)  He discovered the
6   wallet had been stolen from Olea during a robbery the night
7   before.  (Id. at 65.)  The officer arrested Queen.  (Id.)

8   Queen was charged with robbery, in violation of California
9   Penal Code section 211, and intentionally discharging a firearm
10  during the commission of the robbery, in violation of California
11  Penal Code section 12022.53(c).  (Lodgment No. 1, Clerk's Tr.
12  vol. 1, 1-2, Mar. 30, 2006.)

13  On September 28, 2006, Queen's attorney filed a motion to
14  continue the trial to allow her to seek discovery of jury panel
15  information.  (Id. at 62, 67, Sept. 28, 2006.)  On October 4,
16  2006, the day before trial was set to begin, Superior Court Judge
17  Charles G. Rogers heard the continuance motion along with motions
18  in limine.  (Lodgment No. 2, Rep.'s Appeal Tr. vol. 1, 1, 6.)
19  Queen requested discovery because he believed there was a
20  disparity in the number of Hispanic and African American
21  individuals in San Diego County who were summoned and ultimately
22  served on juries, compared to their population in San Diego
23  County.  (Id. at 60-61.)

24  Queen's attorney requested permission to join a similar
25  discovery motion filed in another superior court case and
26  requested the continuance to pursue the matter.  (Id. at 7-8.)
27  The court heard extensive argument regarding the request for a
28  continuance.  (Id. at 8-27.)  The trial judge concluded that

3

"there has not been a sufficient showing to allow or require a
continuance for the purposes of discovery, and, therefore, the
motion to continue . . . is denied." (Id. at 29.)   Judge Rogers
also denied Queen's request to join a motion pending in an
unrelated case.  (Id.)

On October 6, 2006, Queen's trial began.  (Lodgment No. 2,
Rep.'s Appeal Tr. vol. 2, 75.)   The jury found Queen guilty of
robbery as well as intentionally and personally discharging a
firearm.  (Lodgment No. 1, Clerk's Tr. vol. 1, 258, Oct. 12,
2006.)   On January 26, 2007, the trial court sentenced Queen to
the lower term of two years for robbery and a consecutive twenty-
year term for the gun enhancement, which totaled twenty-two years
in state prison.  (Id. at 262, Jan. 26, 2007.)

## II.   PROCEDURAL BACKGROUND

Queen appealed his conviction to the California Court of
Appeal, alleging the trial court abused its discretion by not
reviewing police disciplinary records and by denying Queen's
request for a continuance to investigate whether the jury panel
represented a fair cross-section of the community.  (Lodgment No.
3, Appellant's Opening Br. at 9, 20, People v. Queen, No. D050235
(Cal. Ct. App. Mar. 14, 2008).)   The appellate court affirmed the
judgement against Queen in an unpublished opinion filed on March
14, 2008.  (Lodgment No. 6, People v. Queen, No. D050235, slip
op. at 1 (Cal. Ct. App. Mar. 14, 2008).)   On April 14, 2008,
Queen filed a petition for review in the California Supreme Court
raising only whether he was entitled to discovery to show the
exclusion of groups from the jury panel.  (Lodgment No. 7, People
v. Queen, No. [S162620] (Cal. filed Apr. 14, 2008) (petition for

1  review at 2).)   On May 21, 2008, the state supreme court
2  summarily denied review.  (Lodgment No. 8, <u>People v. Queen</u>, No.
3  S162620, order at 1 (Cal. May 23, 2008).)

4      On July 8, 2009, Queen filed a petition for writ of habeas
5  corpus in the San Diego Superior Court.  (Lodgment No. 9, <u>In re</u>
6  <u>Queen</u>, HC19645 (Cal. Super. Ct. filed July 8, 2009) (petition for
7  writ of habeas corpus at 5).)   Queen alleged the trial court
8  abused its discretion in denying his request for police
9  disciplinary records.  (<u>Id.</u>)  He also argued there was improper
10  exclusion of certain groups of individuals from the jury pool.
11  (<u>Id.</u>)  The superior court denied Queen's petition on August 31,
12  2009.  (Lodgment No. 10, <u>In re Queen</u>, No. HC19645, slip op. at 2
13  (Cal. Super. Ct. Aug. 31, 2009).)  Next, Queen filed his federal
14  Petition for Writ of Habeas Corpus [doc. no. 1].

15      As noted above, Queen requested a Stay of Proceedings
16  Pending State Court Exhaustion [doc. no. 6, 7].  This Court
17  issued a Report and Recommendation Denying Petitioner's
18  Application to Stay Proceedings Pending Exhaustion of State Court
19  Remedies [doc. no. 18].  The district judge adopted the Report
20  and Recommendation and dismissed the unexhausted claims [doc. no.
21  22].  Thus, the only issue that remains is whether the trial
22  court's refusal to continue Queen's case to allow him to obtain
23  discovery to support his claim that the selection of the jury
24  panel denied him due process and his right to a jury composed of
25  a fair cross-section of the community.  (Am. Pet. 4.)  On May 28,
26  2010, Respondent filed an Answer [doc. no. 23].  On July 28,
27  2010, Queen filed a Traverse [doc. no. 28].

28

09cv1804 IEG (RBB)

The Court has review the Amended Petition, Respondent's Answer and Memorandum of Points and Authorities, Petitioner's Traverse, and the lodgments.   For the reasons set forth below, the Court recommends that Queen's Petition for Writ of Habeas Corpus be **DENIED**.

In his Traverse, Queen requested an evidentiary hearing. (Traverse 2, 7.)   As explained below, the Court **DENIES** Queen's request for an evidentiary hearing.

### III.   STANDARD OF REVIEW

Because Queen filed his petition after April 24, 1996, it is subject to the Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996.   28 U.S.C.A. § 2244 (West 2008); <u>Woodford v. Garceau</u>, 538 U.S. 202, 204 (2003) (citing <u>Lindh v. Murphy</u>, 521 U.S. 320, 326 (1997)).   AEDPA sets forth the scope of review for federal habeas corpus claims:

> The Supreme Court, a justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws of the United States.

28 U.S.C.A. § 2254(a) (West 2008); <u>see also Reed v. Farley</u>, 512 U.S. 339, 347 (1994); <u>Hernandez v. Ylst</u>, 930 F.2d 714, 719 (9th Cir. 1991).   Queen filed his Petition on August 31, 2009; AEDPA applies to his case.   <u>See Woodford</u>, 538 U.S. at 204.

To present a cognizable federal habeas corpus claim, a state prisoner must allege his conviction was obtained "in violation of the Constitution or laws or treaties of the United States."   28 U.S.C.A § 2254(a).   A petitioner must allege the state court violated his federal constitutional rights.   <u>Hernandez</u>, 930 F.2d

09cv1804 IEG (RBB)

1   at 719; Jackson v. Ylst, 921 F.2d 882, 885 (9th Cir. 1990);

2   Mannhald v. Reed, 847 F.2d 576, 579 (9th Cir. 1988).

3        A federal district court does "not sit as a 'super' state

4   supreme court" with general supervisory authority over the proper

5   application of state law.  Smith v. McCotter, 786 F.2d 697, 700

6   (5th Cir. 1986); see also Lewis v. Jeffers, 497 U.S. 764, 780

7   (1990) (holding that federal habeas courts must respect state

8   court's application of state law); Jackson, 921 F.2d at 885

9   (concluding federal courts have no authority to review a state's

10  application of its law).  Federal courts may grant habeas relief

11  only to correct errors of federal constitutional magnitude.

12  Oxborrow v. Eikenberry, 877 F.2d 1395, 1399 (9th Cir. 1989)

13  (stating that federal courts are not concerned with errors of

14  state law unless they rise to the level of a constitutional

15  violation).

16       In 1996, Congress "worked substantial changes to the law of

17  habeas corpus."  Moore v. Calderon, 108 F.3d 261, 263 (9th Cir.

18  1997).  Amended section 2254(d) now reads:

19           An application for a writ of habeas corpus on
         behalf of a person in custody pursuant to the judgement
20       of a State court shall not be granted with respect to
         any claim that was adjudicated on the merits in State
21       court proceedings unless the adjudication of the claim

22               (1) resulted in a decision that was
             contrary to, or involved an unreasonable
23           application of, clearly established Federal
             law, as determined by the Supreme Court of
24           the United States; or
                 (2) resulted in a decision that was
25           based on an unreasonable determination of the
             facts in light of the evidence presented in
26           the state court proceeding.

27  28 U.S.C.A § 2254(d).

28       The Supreme Court, in Lockyer v. Andrade, 538 U.S. 63

1 (2003), stated that "AEDPA does not require a federal habeas
2 court to adopt any one methodology in deciding the only question
3 that matters under section 2254(d)(1) -- whether a state court
4 decision is contrary to, or involved an unreasonable application
5 of, clearly established Federal law." (<u>Id.</u> at 71 (citation
6 omitted).)   In other words, a federal court is not required to
7 review the state court decision de novo.  (<u>Id.</u>)  Rather, a
8 federal court can proceed directly to the reasonableness analysis
9 under section 2254(d)(1).  (<u>Id.</u>)

10      The "novelty" in section 2254(d)(1) is "the reference to
11 'Federal law, as determined by the Supreme Court of the United
12 States.'"  <u>Lindh v. Murphy</u>, 96 F.3d 856, 869 (7th Cir. 1996) (en
13 banc), rev'd on other grounds, 521 U.S. 320 (1997) (emphasis in
14 original removed).  Section 2254(d)(1) "explicitly identifies
15 only the Supreme Court as the font of 'clearly established'
16 rules."  (<u>Id.</u>)  "[A] state court decision may not be overturned
17 on habeas corpus review, for example, because of a conflict with
18 Ninth Circuit-based law."  <u>Moore</u>, 108 F.3d at 264-65.  "[A] writ
19 may issue only when the state court decision is 'contrary to, or
20 involved an unreasonable application of,' an authoritative
21 decision of the Supreme Court."  (<u>Id.</u> (citing <u>Childress v.</u>
22 <u>Johnson</u>, 103 F.3d 1221, 1224-26 (5th Cir. 1997); <u>Devin v.</u>
23 <u>DeTella</u>, 101 F.3d 1206, 1208 (7th Cir. 1996); see <u>Baylor v.</u>
24 <u>Estelle</u>, 94 F.3d 1321, 1325 (9th Cir. 1996).)

25      Furthermore, with respect to the factual findings of the
26 trial court, AEDPA provides:

27           In a proceeding instituted by an application for a
           writ of habeas corpus by a person in custody pursuant
28           to the judgement of a State court, a determination of a

factual issue made by a State court shall be presumed
to be correct.  The applicant shall have the burden of
rebutting the presumption of correctness by clear and
convincing evidence.

28 U.S.C.A. § 2254(e)(1).

Queen presented the only exhausted claim in his current federal Petition to the California Court of Appeal and the California Supreme Court.  (See Lodgment No. 3, Appellant's Opening Brief at 9, 20, People v. Queen, No. D050235; Lodgment No. 7, People v. Queen, No. [S162620] (appellant's pet. for review at 11).)  The state appellate court addressed Queen's claim.  (Lodgment No. 6, People v. Queen, No. D050235, slip op. at 5-10.) The California Supreme Court, however, summarily denied his petition for review.  (See Lodgment No. 8, People v. Queen, No. S162620, order at 1.)  This Court gives deference to the last reasoned state court decision, the opinion of the California Court of Appeal.  See Ylst v. Nunnemaker, 501 U.S. 797, 804 (1991).

## IV. DISCUSSION

### A.    Whether Queen's Claim Presents a Federal Question

Petitioner contends that his constitutional rights were violated by "the trial court's refusal to continue his trial in order to allow him to present evidence in support of his claim that the means used to select a jury panel in San Diego County denied him a fair cross section of the community."  (Am. Pet. 4; see also Traverse 5-7.)  Queen alleges this violated his right to due process as well as his rights under the Sixth and Fourteenth Amendments.  (Am. Pet. 4; Traverse 5-7.)  He explains, "The denial of the continuance denied [him] due process of law . . .

9

1  because it precluded him from presenting further evidence . . .

2  that he was denied his right under the Sixth and Fourteenth

3  Amendments to a representative jury pool." (Am. Pet. 5

4  (citations omitted).)

5      Respondent contends that the Petitioner's claim

6  "fundamentally fails to state a federal question in that it

7  challenges the trial court's denial of a continuance motion."

8  (Answer Attach. #1 Mem. P. & A. 4.) Respondent explains that

9  "[t]he question on habeas review, is not whether the trial court

10 erred but whether the Court of Appeal applied the proper federal

11 precedent as established by the United States Supreme Court in

12 disposing of Petitioner's claim." (<u>Id.</u> at 5.) Generally,

13 "whether a trial court grants or denies a continuance motion does

14 not usually raise a federal question because the decision rests

15 within the sound discretion of the trial judge." (<u>Id.</u>) In this

16 case, "the Court of Appeal properly considered and rejected

17 Petitioner's federal constitutional claim." (<u>Id.</u> at 7.)

18      "In conducting habeas review, a federal court is limited to

19 deciding whether a conviction violated the Constitution, laws or

20 treaties of the United States." <u>Estelle v. McGuire</u>, 502 U.S. 62,

21 68 (1991); <u>see also</u> 28 U.S.C. § 2254(a). Habeas relief is not

22 available for an alleged error in the state court's

23 interpretation or application of state law. <u>Estelle</u>, 502 U.S. at

24 67–68; <u>Jammal v. Van de Kamp</u>, 926 F.2d 918, 919 (9th Cir. 1991);

25 <u>see also</u> <u>Dugger v. Adams</u>, 489 U.S. 401, 409 (1989) ("[T]he

26 availability of a claim under state law does not of itself

27 establish that a claim was available under the United States

28 Constitution.").

09cv1804 IEG (RBB)

1   Generally, whether to grant a "continuance is traditionally
2   withing the discretion of the trial judge, and it is not every
3   denial of a request for more time that violates due process . . .
4   ." Ungar v. Sarafite, 376 U.S. 575, 589 (1964) (citing Avery v.
5   Alabama, 308 U.S. 444 (1940)); see also Morris v. Slappy, 461
6   U.S. 1, 11 (1983) ("[B]road discretion must be granted trial
7   courts on matters of continuances . . . ."). To determine
8   whether the denial of a continuance "is so arbitrary as to
9   violate due process[]" a court must consider "the circumstances
10  present in every case, particularly in the reasons presented to
11  the trial judge at the time the request is denied." Ungar, 376
12  U.S. at 589-90 (citing Nilva v. United States, 352 U.S. 385
13  (1957); Torres v. United States, 270 F.2d 252 (9th Cir. 1959);
14  United States v. Arlen, 252 F.2d 491 (2nd Cir. 1959).

15      Thus, the trial court's simple denial of a continuance does
16  not present a federal question; however, the inquiry does not end
17  there. Hawk v. Olson, 326 U.S. 271, 278 (1945). A court must
18  also consider whether that denial resulted in a due process
19  violation. Id.

20      **B.  Whether The Trial Court's Denial Of Queen's Motion to
        Continue Violated His Right To Due Process**

22      In September of 2006, Queen sought to obtain discovery to
23  learn the procedures used to draw jurors from the community.
24  (Lodgment No. 6, People v. Queen, No. D050235, slip op. at 6.)
25  In support of the request, defense counsel submitted her
26  declaration. (Id.) The court of appeal explained:

27          [O]n information and belief, [defense counsel
            alleged] that there existed "a disparity
            between the number of Hispanics and/or
28          African Americans living in San Diego County

11                                    09cv1804 IEG (RBB)

1     and the number of Hispanics and/or African
    Americans who are both called to serve, and
2     those who actually serve on juries in San
    Diego County." The declaration did not
3     allege that the underrepresentation was
    caused by any improper practices in the jury
4     selection process.

5 (Id.) The trial court denied Queen's discovery motion and motion

6 to continue "based upon its belief that the discovery would not

7 show a systematic exclusion of certain groups." (Id.)

8     The California Court of Appeal affirmed the denial of a

9 continuance and stated:

10

11     "It is uncontroverted that '[i]n California, the
right to trial by a jury drawn from a representative
cross-section of the community is guaranteed equally
12 and independently by the Sixth Amendment to the federal
Constitution [citation] and by article I, section 16 of
13 the California Constitution [citation].' [Citation.]
'In order to establish a prima facie violation of the
14 fair-cross section requirement, the defendant must show
(1) that the group alleged to be excluded is a
15 "distinctive" group in the community; (2) that the
representation of this group in venires from which
16 juries are selected is not fair and reasonable in
relation to the number of such persons in the
17 community; and (3) that this underrepresentation is due
to systematic exclusion of the group in the jury
18 selection process.' [Citation.]" [People v. Jackson,
13 Cal. 4th 1164, 1194, 920 P.2d 1254, 1267-68, 56 Cal.
19 Rptr. 2d 49, 63 (1996).]

20     Where a defendant seeks to ascertain whether an
improper jury selection process exists, that defendant
21 has certain rights to discovery: "Here we consider not
whether defendant has made a prima facie case, but the
22 prior question of whether defendant was wrongly denied
the discovery of information necessary to make such a
23 case. . . . [U]pon a particularized showing supporting
a reasonable belief that underrepresentation in the
24 jury pool or the venire exists as the result of
practices of systematic exclusion, the court must make
25 a reasonable effort to accommodate the defendant's
relevant requests for information designed to verify
26 the existence of such underrepresentation and document
its nature and extent." [Jackson, 13 Cal. 4th at 1194,
27 920 P.2d at 1268, 56 Cal. Rptr. 2d at 63 (emphasis
omitted).]

28

09cv1804 IEG (RBB)

Here, the court did not abuse its discretion in denying Queen's motion for a continuance to obtain discovery of juror underrepresentation.  In support of his motion[,] . . . Queen did not even attempt to make a "particularized showing supporting a reasonable belief that underrepresentation in the jury pool or the venire exists as a result of practices of systematic exclusion[]" . . . .  Rather, Queen's motion only alleged the bare fact of underrepresentation. . . . Queen's reliance on <u>United States v. Rodriguez-Lara</u> [421 F.3d 932, 946 (2005) (9th Cir. 2005),] is similarly unavailing as in that case the defendant alleged in his motion for discovery "a plausible theory of systematic exclusion:  specifically, that the use of voter registration records as the sole source of names" for the jury pool systematically underrepresented Hispanics.  Although counsel for Queen alleged on information and belief that there was systematic exclusion of certain minority groups, counsel did not attempt to show that exclusion was the result of practices "of systematic exclusion."

Queen asserts that the court abused its discretion because it was "speculating" as to the ultimate success of Queen's motion because of its opinion that any underrepresentation in the jury venire was caused by economics, and not by practices of systematic exclusion.  Assuming that there was insufficient evidence in the record from which the court could find that underrepresentation was caused by economics, not a systematic problem with the jury selection process, the court's reasoning for denying Queen's motion does not change the result in this matter.  As we have explained, <u>ante</u>, Queen failed to meet his burden of making a particularized showing supporting a reasonable belief that underrepresentation in the jury pool or venire exists as the result of practices of systematic exclusion, and therefore it was not error for the court to deny his motion for a continuance.

(<u>Id.</u> at 8-10 (citation omitted).)

On October 4, 2006, the day before trial was set to begin, Judge Rogers heard Queen's motion for a continuance along with motions in limine. (Lodgment No. 2, Rep.'s Appeal Tr. vol. 1, 1, 6.)  There was extensive argument.  (<u>Id.</u> at 8-29.)  As the California Court of Appeal noted, Queen presented no evidence of systematic exclusion of Hispanic or African American individuals. (<u>Id.</u> at 24-27.)  Nor did Queen offer any evidence, or even any

13

1  explanation, except that his counsel speculated that a juror's
2  ability to "opt-out" of jury service at a particular location may
3  exclude certain racial groups.  (Id. at 24-25.)  Queen simply
4  relied on the number of people in San Diego County compared with
5  a perception of the number who actually present themselves for
6  jury service.  (Id. at 25.)  Queen introduced no evidence.  (Id.
7  at 24-27.)

8      Although Petitioner argues in his Traverse that he was
9  denied an opportunity to make a particularized showing that there
10  was a systematic cause for underrepresentation because the trial
11  judge concluded it was an economic reality, this argument fails.
12  (Traverse 6 (citing Rodriguez-Lara, 421 F.3d at 945-46).)  The
13  trial court heard Queen's motion, and as the appellate court
14  explained, the court did not abuse its discretion in denying a
15  continuance because Petitioner did not attempt to make a
16  particularized showing that underrepresentation was the product
17  of systematic exclusion.  (See Lodgment No. 6, People v. Queen,
18  No. D050235, slip op. at 9.)  Instead, he relied on the alleged
19  fact of underrepresentation.  (Id.)  The court of appeal
20  considered Rodriguez-Lara and found Petitioner's argument
21  unconvincing because Queen did not offer a plausible theory that
22  any underrepresentation was caused by systematic exclusion.  (Id.
23  at 9-10.)  Underrepresentation alone is insufficient.  Duren v.
24  Missouri, 439 U.S. 357, 364 (1979) (holding that any
25  underrepresentation of a distinct group during the jury selection
26  process must be caused by a systematic exclusion to constitute a
27  constitutional violation).  Regardless of whether the trial judge
28  considered an alternative explanation for any

09cv1804 IEG (RBB)

1  underrepresentation, Petitioner failed to make a particularized

2  showing that there was systematic exclusion.  He had the

3  opportunity to do so, and his argument fell short.

4      Queen asserts that the California Court of Appeal

5  unreasonable applied <u>Duren v. Missouri</u>, 439 U.S. 357 (1979),

6  clearly established Supreme Court law, to the facts in his case.

7  (Traverse 6-7.)  The contours of the Sixth Amendment's fair

8  cross-section requirement are not clearly established.  In

9  <u>Berghuis v. Smith</u>, __ U.S. __, 130 S.Ct. 1382, 1388 (2010), the

10 Court considered a fair cross-section habeas claim challenging a

11 juror-assignment procedure that "assigned prospective jurors

12 first to local district courts, and, only after filling local

13 needs, made remaining persons available to the countywide Circuit

14 Court, which heard felony cases like Smith's."  Justice Ginsburg,

15 writing for the Court, reversed the Sixth Circuit's grant of

16 habeas relief.  "[O]ur <u>Duren</u> decision hardly establishes -- no

17 less 'clearly so' -- that Smith was denied his Sixth Amendment

18 right to an impartial jury drawn from a fair cross section of the

19 community."  <u>Id.</u> at 1392.  The Court continued, "In <u>Taylor</u> [<u>v.</u>

20 <u>Louisiana</u>, 419 U.S. 522, 537-38 (1975)], we 'recognized broad

21 discretion in the States' to 'prescribe relevant qualifications

22 for their jurors and to provide reasonable exemptions.'"  <u>Id.</u> at

23 1395; <u>see also</u> <u>Clay v. Bowersox</u>, 367 F.3d 993, 1004 (8th Cir.

24 2004).

25     In <u>Clay</u>, "[t]he state courts denied Clay's motion for post-

26 conviction discovery because he 'does not allege that any

27 particular cognizable group was underrepresented.'"  <u>Clay</u>, 367

28 F.3d at 1004.  The Eighth Circuit affirmed the district court and

agreed that Clay was not entitled to habeas relief based on the denial of jury-selection discovery, noting that "'Clay cites no authority –– nor can the Court find any –– which indicates that the [state] motion court committed <u>constitutional</u> error by denying the request.'"  <u>Id.</u> (citing <u>Duren</u>, 439 U.S. 357).  Queen's claim faces the same obstacle.

Alternatively, the state court's denial of a continuance to pursue discovery concerning the court's jury-selection process was not an unreasonable application of <u>Ungar v. Sarafite</u>, 376 U.S. 575.  "There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process.  The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied."  <u>Id.</u> at 589.

The state appellate court considered the circumstances of Queen's case and the reasons he presented to the trial judge for a continuance.  It reasonably determined there was no constitutional violation.  Therefore, the Petition should be **DENIED**.

## C.   <u>Evidentiary Hearing</u>

In his Traverse, Queen requested an evidentiary hearing. (Traverse 2, 7.)  Based on the finding in this Report and Recommendation that Petitioner is not entitled to habeas relief, his request for an evidentiary hearing is denied.  <u>See</u> <u>Bashor v. Risley</u>, 730 F.2d 1228, 1233 (9th Cir. 1984) (holding that an evidentiary hearing is not required on issues that can be resolved on the basis of the state court record).  As a result, Queen's request for an evidentiary hearing is **DENIED**.

16

## V.   CONCLUSION

For the above reasons, Queen's Petition for Writ of Habeas Corpus should be **DENIED**.   Petitioner's request for an evidentiary hearing is **DENIED**.

This Report and Recommendation will be submitted to he United States District Court judge assigned to this case, pursuant to he provisions of 28 U.S.C. § 636(b)(1).   Any party may file written objections with the Court and serve a copy on all parties on or before September 17, 2010.   The document should be captioned "Objections to Report and Recommendation."   Any reply to the objections shall be served and filed on or before September 30, 2010.   The parties are advised that failure to file objections within the specified time may waive the right to appeal the district court's order.   <u>Martinez v. Ylst</u>, 951 F.2d 1153, 1157 (9th Cir. 1991).

Dated: August 27, 2010

_____
RUBEN B. BROOKS
United States Magistrate Judge

cc:     Judge Gonzalez
        All parties of record

17                                        09cv1804 IEG (RBB)