1
2
3
4
5
6
7
8
9
10

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| BRADLEY DWAYNE QUEEN,<br>Petitioner,<br><br>vs.<br><br>MATTHEW CATE, Secretary of the California Department of Corrections and Rehabilitation,<br><br>Respondent. | **CASE NO: 09-CV-1804-IEG (RBB)**<br><br>**ORDER**<br>**(1) ADOPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION [Doc No. 29];**<br>**(2) REJECTING PETITIONER'S OBJECTIONS [Doc. No. 32];**<br>**(3) DENYING AND DISMISSING PETITION FOR WRIT OF HABEAS CORPUS; and**<br>**(4) DENYING CERTIFICATE OF APPEALABILITY** |
|---|---|

Currently before the Court is Bradley Dwayne Queen's ("Petitioner") Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 ("Petition"). Petitioner challenges his conviction in the Superior Court for the County of San Diego, case number SCD 1195535, for robbery and intentionally discharging a firearm.

The Court referred the matter to United States Magistrate Judge Ruben B. Brooks pursuant to 28 U.S.C. § 636(b)(1)(B). Magistrate Judge Brooks issued a Report and Recommendation (the "Report") recommending the Court deny and dismiss the Petition on the merits. [Doc. No. 29]. Petitioner subsequently filed his objections to the Report. [Doc. No. 32]. Having considered the Report

and Petitioner's objections, the Court hereby: (1) ADOPTS the Report in full; (2) REJECTS Petitioner's objections; (3) DENIES and DISMISSES the Petition; and (4) DENIES a certificate of appealability.

## BACKGROUND

### I.   Factual background

The Court adopts the Magistrate Judge's detailed factual background, [see Report, at 2-4], and takes from the California Court of Appeal's opinion in People v. Queen, No. D050235, 2008 WL 684502 (Cal. Ct. App. Mar. 14, 2008). Pursuant to 28 U.S.C. § 2254(e)(1), the Court presumes those factual determinations are correct.

### II.   Procedural background

On October 12, 2006, a jury found Queen guilty of robbery and intentionally and personally discharging a firearm. [Lodgment No. 1, Clerk's Tr. Vol. 1, 258, Oct. 12, 2006.] On January 26, 2007, the trial court sentenced Queen to a total of twenty years in state prison—the lower term of two years for robbery and a consecutive twenty-year term for the gun enhancement. [Id. at 262, Jan. 26, 2007.]

Queen appealed his conviction to the California Court of Appeal, alleging the trial court abused its discretion by not reviewing police disciplinary records and by denying Queen's request for a continuance to investigate whether the jury panel represented a fair cross-section of the community. [Lodgment No. 3, Appellant's Opening Br. at 9, 20, People v. Queen, No. D050235 (Cal. Ct. App. Mar. 14, 2008).] The appellate court affirmed the judgment in an unpublished opinion. [Lodgment No. 6, People v. Queen, No. D050235, slip op. at 1 (Cal. Ct. App. Mar. 14, 2008).] On April 14, 2008, Queen filed a petition for review in the California Supreme Court raising only whether he was entitled to discovery to show the exclusion of groups from the jury panel. [Lodgment No. 7, People v. Queen, No. S162620 (Cal. filed Apr. 14, 2008) (petition for review at 2).] On May 21, 2008, the state supreme court summarily denied review. [Lodgment No. 8, People v. Queen, No. S162620, at 1 (Cal. May 23, 2008).]

Queen filed a petition for writ of habeas corpus in the San Diego Superior Court on July 8, 2009, alleging (i) the trial court abused its discretion in denying his request for police disciplinary

records, and (ii) certain groups were improperly excluded from the jury pool. [Lodgment No. 9, <u>In re Queen</u>, HC19645, at 5 (Cal. Super. Ct. filed July 8, 2009).]

Queen requested a stay of proceedings in federal court pending state court exhaustion. [Doc. Nos. 6 & 7.] However, the Court adopted the Report and Recommendation issued by Magistrate Judge Brooks and denied Queen's request for a stay. [Doc. No. 22] The Court dismissed the unexhausted claims. [<u>Id.</u>] Thus, Petitioner's only remaining claim is that the trial court denied Queen due process and his right to a jury composed of a cross-section of the community in violation of his rights under the Sixth and Fourteenth Amendments. Petitioner alleges those constitutional violations occurred when the trial court denied his motion for a continuance and for discovery to support his claim that San Diego County's juror-selection process systematically excludes African-American and Latino residents from serving on petit juries in criminal cases.

Because Petitioner has objected to the Report in its entirety, the Court reviews the Report *de novo*. 28 U.S.C. § 636(b)(1)(C); <u>Holder v. Holder</u>, 392 F.3d 1009, 1022 (9th Cir. 2004).

## LEGAL STANDARD

A federal court may grant a petition pursuant to Section 2254 only if the state court's action was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); <u>Williams v. Taylor</u>, 529 U.S. 362, 403, 412-13 (2000).

A state court's decision is "contrary to" clearly established federal law if the state court (1) "arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law" or (2) "decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." <u>Williams</u>, 529 U.S. at 413. On the other hand, a state court's decision is an "unreasonable application" if the state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." <u>Id.</u> The state court's decision has to be more than erroneous or incorrect; rather, the application of federal law must be "objectively unreasonable." <u>Lockyer v. Andrade</u>, 538 U.S. 63, 75-76 (2003) (citations omitted).

The "clearly established" federal law, as determined by the Supreme Court of the United States, "'refers to the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision.'" Carey v. Musladin, 549 U.S. 70, 74 (2006) (quoting Williams, 529 U.S. at 412). However, Section 2254(d) "does not 'require state and federal courts to wait for some nearly identical factual pattern before a legal rule must be applied.'" Panetti v. Quarterman, 551 U.S. 930, 953 (2007) (quoting Musladin, 549 U.S. at 81 (Kennedy, J., concurring in judgment)). Thus, habeas relief may be appropriate under the "unreasonable application" prong when a state court violates the *legal principle* established by a Supreme Court decision, as long as that legal principle is applicable to petitioner's claims without "tailoring or modification" of the standard. Moses v. Payne, 555 F.3d 742, 753-54 (9th Cir. 2009) (citing Panetti, 551 U.S. 930, and Smith v. Patrick, 508 F.3d 1256 (9th Cir. 2007)). Moreover, Ninth Circuit case law may be "persuasive authority for purposes of determining whether a particular state court decision is an 'unreasonable application' of Supreme Court law, and also may help [the Court] determine what law is 'clearly established.'" Duhaime v. Ducharme, 200 F.3d 597, 600 (9th Cir. 2000) (citations omitted).

## DISCUSSION

### I. Petitioner's Objection

Petitioner argues the trial court denied him due process by refusing to continue his trial so he could seek discovery of evidence to support his claim that the methods used to select jury panels in San Diego County denied Petitioner his right under the Sixth and Fourteenth Amendments to a representative jury pool. [Pet'r's Objections, Doc. No. 32, at 3.]

The trial judge has broad discretion in deciding whether to grant continuances, and "only an unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay'" violates a defendant's due process rights. See Morris v. Slappy, 461 U.S. 1, 11-12 (1983) (quoting Ungar v. Sarafite, 376 U.S. 575, 589 (1964)). Whether the denial of a continuance is so arbitrary as to violate due process is a fact-specific inquiry, with particular focus on the "reasons presented to the trial judge at the time the request is denied." Ungar, 376 U.S. at 589.

The Sixth Amendment guarantees criminal defendants a jury made up of a fair cross section of the community. Taylor v. Louisiana, 419 U.S. 522, 530 (1975). It does not guarantee a jury of "any particular composition," but instead requires only that the pool from which jurors are chosen "must not

systematically exclude distinctive groups in the community and thereby fail to be reasonably representative thereof." Id. at 538.  To establish a prima facie violation of the Sixth Amendment's fair-cross-section requirement, a criminal defendant must show "(1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process." Berghuis v. Smith, __ U.S. __, 130 S. Ct. 1382, 1392 (2010) (quoting Duren v. Missouri, 439 U.S. 357, 364 (1979)).  "The fair-cross-section principle must have much leeway in application." Berghuis, 130 S. Ct. at 1389 (quoting Taylor, 419 U.S. at 537-38).  It is not the role of the federal courts to "fashion[] detailed jury-selection codes." Taylor, 419 U.S. at 537.

Under California law, where the relevant "jury selection criteria are neutral with respect to race, ethnicity, sex, and religion, . . . [t]he defendant must [also] identify some aspect of the manner in which those criteria are being applied that is: (1) the probable cause of the disparity, and (2) constitutionally impermissible." People v. Jackson, 13 Cal. 4th 1164, 1194 (1996) (internal quotation marks and citations omitted).

In his motion before the trial court, Petitioner asserted that African-American or Hispanic individuals are underrepresented in the venires from which juries are selected in San Diego County.  As the magistrate judge's Report notes, the trial court denied Petitioner's motion for a continuance, finding that Petitioner failed to make any showing of systematic and improper practices in the jury selection process.  [See Report, at 11-12.]  The California Court of Appeal affirmed the denial of a continuance and held that Petitioner failed to make a "particularized showing supporting a reasonable belief that underrepresentation in the jury pool or the venire exists as the result of practices of systematic exclusion" sufficient to warrant a continuance or discovery.  [Lodgment No. 6, People v. Queen, No. D050235, slip op. at 6-10.]

The magistrate judge's Report noted that Petitioner presented no evidence and offered no plausible explanation of systematic exclusion of Hispanic or African-American individuals from jury pools in San Diego County.  [Report, at 13-14.]  Petitioner merely "relied on the number of people in San Diego County compared with a perception of the number who actually present themselves for jury

service" and speculated during oral argument "that a juror's ability to 'opt-out' of jury service at a particular location may exclude certain racial groups." [Id.]  Because Petitioner failed to "offer a plausible theory that any underrepresentation was caused by systematic exclusion," the Report found the determinations of the trial and appellate courts reasonable. [Id. at 14-16.]

Petitioner objects, arguing the denial of a continuance and discovery denied him due process because it effectively precluded him establishing that his Sixth Amendment right to a jury composed of a fair cross section of the community was violated.

Petitioner correctly distinguishes between the requirement of making a particularized showing of systematic exclusion of distinctive groups in the community from the pool of prospective jurors and a request for a continuance and discovery to make such a case.  "A defendant who seeks access to this information is obviously not required to justify that request by making a prima facie case of underrepresentation." Jackson, 13 Cal. 4th at 1194.  Such a defendant, however, still must describe the particular procedure that causes a systematic exclusion, offer a plausible explanation for *how* that procedure causes a systematic exclusion, explain how the information sought will be useful in demonstrating a systematic exclusion, and demonstrate the information is not otherwise available.  See United States v. Rodriquez-Lara, 421 F.3d 932, 946 (9th Cir. 2005) (finding the defendant made a "substantial showing sufficient to warrant further inquiry" and was entitled to expert assistance to help him establish his underlying claim, in part, because he had "alleged (*with some support*, though no particularized evidence) *a plausible theory of systematic exclusion*: specifically, that the use of voter registration records as the sole source of names for the Fresno Division jury pool systematically underrepresents Hispanics") (emphasis added); Jackson, 13 Cal. 4th at 1194-95 (affirming the denial of a continuance and discovery related to the defendant's systematic exclusion claim because the information defendant sought to discover was readily available to the public).

Here, as both the appellate court and the magistrate judge's Report note, Petitioner's motion made no attempt to highlight specific procedures or to explain how those procedures systematically exclude certain members of the community from the jury pool; rather, his "motion only alleged the

bare fact of underrepresentation."[1]  [Lodgment No. 6, People v. Queen, No. D050235, slip op. at 9-10; see Report, at 11-16.]   Underrepresentation, without more, does not constitute a substantial showing sufficient to warrant further inquiry.  Duren, 439 U.S. at 364.

Petitioner also argues the trial court "agree[d] that certain groups were under-represented," but found, "without any evidence or discovery to support that finding," that economic status rather than systematic exclusion likely caused any underrepresentation.  [Pet'r's Objection, at 4.]  But, as the Report and the appellate court noted, even if the trial court reached such a conclusion without sufficient evidence, the result in this case would not change.  [Report, at 14; Lodgment No. 6, People v. Queen, No. D050235, slip op. at 8-10.]  Whether or not the trial judge considered an alternative explanation for the alleged underrepresentation, Petitioner failed to allege a plausible theory of systematic exclusion, and thus failed to meet his burden of showing that his claim warranted further inquiry.

Finally, the trial court's denial of a continuance to pursue discovery concerning the court's jury-selection process was not an unreasonable application of clearly established federal law as outlined by the Supreme Court.  No clearly established Supreme Court precedent establishes that a defendant can "make out a prima facie case merely by pointing to a host of factors that, individually or in combination, *might* contribute to a group's underrepresentation"—let alone a defendant who, like Petitioner, fails to specifically identify any such factors.  See Berghuis, 130 S. Ct. at 1395-96; see also Clay v. Bowersox, 367 F.3d 993, 1004 (8th Cir. 2004) (noting that neither the petitioner nor the court found any authority indicating that the state court's denial of a "request for discovery that *might* uncover evidence that [the petitioner's] jury did not represent a fair cross-section of the community" constitutes a constitutional error) (emphasis added).[2]

---

[1] The trial court also denied Petitioner's request to join a motion pending in an unrelated case that concerned the composition of the jury pool in San Diego County's Central Division. [Report, at 4; Pet'r's Objection, at 4.]  But simply joining another motion would not have been sufficient to cure the deficiencies in Petitioner's request.  Neither Petitioner's objection to the Report nor his motion before the trial court provide any indication that the motion Petitioner sought to join highlighted any specific procedures or offered a plausible theory of systematic exclusion.  [See Pet'r's Objection, at 4 (citing Lodgment No. 1, at 78, ¶ 4).]

[2] Petitioner's attempts to distinguish Berghuis and Clay are unavailing.  First, Petitioner argues that the defendant in Berghuis, unlike in this case, enjoyed the benefit of a hearing to determine how prospective jurors were assigned.  [Pet'r's Objection, at 4-5.]  Although correct, that ignores an

The state appellate court considered the specific circumstances of Petitioner's case, and reasonably found that Petitioner failed to make a showing sufficient to warrant further inquiry. See Unger, 376 U.S. at 589. Therefore, the state courts did not unreasonably apply clearly-established federal law in denying Petitioner's requests for a continuance and discovery. Accordingly, the Petition is **DENIED**.

## II.     Certificate of Appealability

A petitioner complaining of detention arising from state court proceedings must obtain a certificate of appealability ("COA") to file an appeal of the final order in a federal habeas proceeding. 28 U.S.C. § 2253(c)(1)(A). The court may issue a COA only if the petitioner "has made a substantial showing of the denial of a constitutional right." Id. § 2253(c)(2). To make a "substantial showing," the petitioner must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). In the present case, the Court finds Petitioner has not made a "substantial showing" of the denial of his constitutional rights and therefore **DENIES** a COA with respect to Petitioner's remaining claim.

**IT IS SO ORDERED.**

DATED: 2/4/2011

_____
**IRMA E. GONZALEZ, Chief Judge**
**United States District Court**

---

important focus of the Supreme Court's decision in Berghuis: where jury-selection procedures do not violate clearly established precedent, Petitioner must do more than baldly allege that the procedures result in systematic exclusion. See Berghuis, 130 S. Ct. at 1395-96. Moreover, Berghuis explicitly recognized the "broad discretion in the States" to "prescribe relevant qualifications for their jurors and to provide reasonable exemptions." Id. (citing Taylor, 419 U.S. at 537-38).

Second, Petitioner correctly notes that, in Clay, unlike this case, the defendant failed to allege that "any particular cognizable group was underrepresented." Clay, 367 F.3d at 1004. But the magistrate judge's Report noted that distinction as well; the Report points to Clay not because it is exactly on point, but because the petitioner in Clay, like Petitioner in this case, failed to cite any authority supporting his claim that the state court's denial of a discovery request amounted to a constitutional error or otherwise violated clearly established federal law. [See Report, at 15-16.]